IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

In Re:                                      )        Chapter 12
    Joseph William Kirkland, Sr.,    )
                                    )        Case No. 11-24514
    Debtor                          )

**SECOND PRE CONFIRMATION CHAPTER 12 PLAN AMENDMENT**

The Debtor, Joseph Kirkland (hereinafter referred to as "Debtor"), proposes the following plan of reorganization:

### ARTICLE I
### TREATMENT OF UNCLASSIFIED CLAIMS
### AND CLASSIFIED CLAIMS

### A. UNCLASSIFIED CLAIMS

Creditors having filed and allowed priority claims under 11 U.S.C. Section 507(a) will be paid in cash in full as soon as practicable after confirmation or in such deferred payments as a particular holder may agree to accept.

### B. CLASSIFIED CLAIMS

**CLASS 1**     BAC Home Loans Serv. LP
**CLASS 2**     Community & Southern Bank
**CLASS 3**     Community & Southern Bank
**CLASS U**     General Unsecured Debt
**CLASS A**     Administrative Expenses

### ARTICLE II
### TREATMENT OF CLASSES UNDER THE PLAN

Each class of creditors shall be treated as follows under the Plan:

**CLASS I     BAC Home Loan Serv. LP**

The claim of BAC Home Loan Serv. LP is secured by a first lien security deed on the Debtor's residence located at 228 Pleasant Hill Church Road SE, Winder, Georgia 30680 in Barrow County, comprising 10 acres more or less (hereinafter referred to as the "Residence"). The Residence is valued at $200,000, inclusive of the real estate and home. BAC Home Loans Serv. LP has filed a claim in the amount of $350,306.91.

Debtor proposes to pay BAC Home Loan Serv. LP's allowed claim as follows: Debtor will pay $200,000.00 amortized over twenty (20) years, bearing interest at an annual rate of five

and 1/4 (5.25%) percent.  Thirty-Six principal and interest payments shall be made by the Trustee to BAC Home Loan Serv. LP in the amount of $1,347.69 each, with the final payment of all unpaid and accrued interest and principal being due on November 30, 2017.  BAC Home Loans Serv. LP shall retain its lien on the real estate for the amount of its secured claim as set forth here.  Except as expressly modified by the terms of this Plan, the terms and conditions of the loan documents (including any Note(s) and Deeds to Secure Debt in favor or BAC Home Loans Serv. LP) shall survive Confirmation.  BAC Home Loans Serv. LP has filed a claim in the amount of $350,306.91.

In the event any of the collateral is disposed of with approval of BAC Home Loans Serv. LP or by Court order, then the installments will be recalculated to reflect any reduction in principle.

BAC Home Loan Serv LP shall retain its lien on the real estate and improvements for the amount of its secured claim as set forth here.  Except as expressly modified by the terms of this Plan, the terms and conditions of the loan documents (including any Note(s) and Deeds to Secure Debt in favor of BAC Home Loan Serv. LP) shall survive Confirmation.

### CLASS II     Community & Southern Bank

The claim of Community & Southern Bank is secured by a first lien security deed on the Debtor's real property located at 228 Pleasant Hill Church Road SE, Winder, Georgia 30680 (hereinafter "Farm")  in Barrow County, comprising 18 acres more or less, together with 5 chicken houses (the real property and the attendant equipment hereinafter referred to as the "Farm").  The Farm is valued at $320,000.00, inclusive of the real estate and chicken houses.  The balance of Community & Southern Bank's claim against the Farm as of the date of the filing of the instant case was $306,915.25.

Debtor proposes to pay Community & Southern Bank's allowed claim as follows: Debtor will pay $306,915.25 amortized over twenty (20) years, bearing interest at an annual rate of five and 1/4 (5.25%)  percent.  Thirty-Six principal and interest payments shall be made by the Trustee to Community & Southern Bank in the amount of $2,068.13, with the final payment of all unpaid and accrued interest and principal being due on November 30, 2017.  Community & Southern Bank shall retain its lien on the real estate for the amount of its secured claim as set forth here.  Except as expressly modified by the terms of this Plan, the terms and conditions of the loan documents (including any Note(s) and Deeds to Secure Debt in favor or Community & Southern Bank) shall survive Confirmation.  The balance of Community & Southern Bank's claim shall be treated as unsecured.

In the event any of the collateral is disposed of with approval of Community & Southern Bank or by Court order, then the installments will be recalculated to reflect any reduction in principle.

**CLASS 3    Community & Southern Bank**

The claim of Community & Southern Bank is secured by a first lien security deed on the Debtor's real property located at 431 Argunne Road, Winder, Georgia 30680 in Barrow County, comprising 2.5 acres more or less, together with 7 mobile homes (the real property and the mobile homes hereinafter referred to as the "Trailer Park"). The Trailer Park is valued at $66.126.75, inclusive of the real estate and trailers with a value of $53,042.00 and equity in the Farm though cross collateralization in the amount of $13.084.75. The balance of Community & Southern Bank's claim against the Trailer Park as of the date of the filing of the instant case was$87,483.94.

Debtor proposes to pay Community & Southern Bank's allowed claim as follows: Debtor will pay $66,126.75 amortized over twenty (20) years, bearing interest at an annual rate of five and 1/4 (5.25%) percent. Thirty-Six principal and interest payments shall be made by the Trustee to Community & Southern Bank in the amount of $445.59, with the final payment of all unpaid and accrued interest and principal being due on November 30, 2017. Community & Southern Bank shall retain its lien on the real estate for the amount of its secured claim as set forth here. Except as expressly modified by the terms of this Plan, the terms and conditions of the loan documents (including any Note(s) and Deeds to Secure Debt in favor or Community & Southern Bank) shall survive Confirmation. The balance of Community & Southern Bank's claim shall be treated as unsecured.

In the event any of the collateral is disposed of with approval of Community & Southern Bank or by Court order, then the installments will be recalculated to reflect any reduction in principle.

**CLASS 4    Midland Funding LLC**

Midland Funding, LLC holds a Judicial Lien against the property of Debtor. Debtor filed a Motion to Avoid the Judicial Lien of Midland Funding, LLC, which order was granted by the Court on February 8, 2012, providing for the treatment of Midland Funding LLC's claim as an unsecured non-priority debt subject the provisions of Class U Creditors.

**CLASS U    GENERAL UNSECURED CREDITORS**

Unsecured claims that are otherwise unclassified shall receive, pro-rata, that portion of the disposable income of the Debtor, as defined by 11 U.S.C. Section 1225(b)(2), that remains after payment of regular installments of secured and priority claims over a three (3) year period beginning on December 1, 2011. Disposable income shall be defined to be all income received by the Debtor which is not reasonably necessary for the payment of expenditures necessary for the continuation, preservation, and operation of the Debtor's businesses (including payments to the creditors hereunder), and for the maintenance or support of Debtor and Debtor's dependents. The sum of $20,897.28 annually, plus the amount of the monthly plan payment of $4,248.00, shall be deemed reasonably necessary for the maintenance and support of Debtor and Debtor's Dependants.

The Debtor shall account annually to the Chapter 12 Trustee for all income and expenses received by him in the preceding twelve month period.  Such accountings are due to the Chapter 12 Trustee within forty-five (45) days of November 30, 2012, November 30, 2013, and November 30, 2014.

### CLASS A     ADMINISTRATIVE EXPENSES

Debtor anticipates administrative expenses for attorney's fees in the amount of $7,500.00.  Debtor has paid a retainer to Debtor's Counsel's Trust Account in the amount of $5,000.00 prior to the filing of the instant case ("Retained Fee").  Debtor's counsel shall file periodic fee applications with the Court seeking approval for attorney's fees at the rate of $250.00 per hour.  Upon approval by the court, attorney's fees shall be paid to Debtor's counsel from the Retained Fee, up to the sum of $5,000.00.  After the Retained Fee has been depleted, all approved attorney's fees shall  be paid to Debtor's counsel by the Trustee from the funds available to the Chapter 12 Trustee,  after payment of all set payments stated otherwise herein, until paid in full.

The Trustee shall be entitled to the statutory fee of up to 10% of receipts as forth by the Attorney General.

### ARTICLE III
### A. MEANS FOR EXECUTION OF THE PLAN

The funds necessary for the payments provided for by the Plan will come from the Debtor's operation, and other business and non-business income, loans to the Debtor, and, if necessary, from the liquidation or abandonment of assets by the Debtor.  Additionally, Debtor shall use such funds of the Bankruptcy Estate as are being held by the Chapter 12 trustee and not otherwise applied to payment of any expense by order of this Court for the operation of the Debtor's chicken farm.  The Debtor shall submit such portion of the future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

Debtor has paid the sum of $17,000.00 through March 30, 2012, and shall start paying the sum of $4248.00 monthly on April 30, 2012 and shall continue to pay said amount for the duration of the plan term

### B. EXECUTORY CONTRACTS

The Debtor is a party to a contract under which he raises poultry owned and is paid a fee for such services, with the cost of fee, minerals, and medicines for the poultry deducted from the fees paid to the Debtor.  The Debtor has substantially complied with his obligations under the contract.  Upon confirmation of this plan, such contract will be assumed.

Any other executory contract or leases not assumed or rejected prior to the effective date of the Plan are rejected.  Claims arising from the rejection or executory contracts or leases must be filed with the Court and served on the Debtor within thirty (3) days from the date of

confirmation of the Plan in order to be allowed.

## ARTICLE IV
## OPERATION

Debtor will continue his farming operation, including the raising of poultry under contract.

1.

Debtor shall be the Debtor-in-Possession (hereinafter "Debtor") will full and complete power and authority to continue the operation, control, and possession of the poultry and the assets of the Debtor in the same manner as prior to the filing of these proceedings, and with such other authority and responsibility as is hereinafter designated or required, but subject to the direction of the Bankruptcy Court (hereinafter "Court"). After confirmation, Debtor may employ Hicks, Massey & Gardner, LLP as required, as legal advisor. After confirmation, Debtor shall retain all rights and powers accorded by 11 U.S.C. Section 1203 until the closing of the case.

2.

Title to the Debtor's property shall re-vest in the Debtor upon confirmation of the Plan, subject to any liens retained by creditors, pursuant to this plan or granted to creditors hereunder. Allowed secured claims shall retain their liens upon the fair market value of the collateral securing said claims, subject to the provisions of the Plan.

3.

The Debtor shall compute disposable income, subject to review by the Trustee. In determining disposable income, expenses necessary for the continuation, preservation, and operation of the Debtor's business shall include the estimated cost of maintaining land to be farmed and farm buildings, seed, fertilizer, chemical, and other crop input expenses, rent, taxes, fuel and utilities, labor, equipment repair and replacement, insurance, and interest on operating loans.

4.

Upon payment of the amount provided by the Plan for any secured claims, the lien upon the Debtor's property securing said claim shall be deemed canceled. Any creditor holding such lien shall execute and file all documents as are necessary to cancel such lien as of record.

5.

The Debtor may pre-pay Debtor's obligations under the Plan without penalty of charge of un-accrued interest.

6.

Where the Debtor has proposed a modification of the Plan, the Debtor shall not be in default with respect to the terms being modified pending Court consideration of the proposed modification.

7.

The Debtor and the Trustee expressly preserve any and all claims, objection, defenses, set-offs, counterclaims, or the like which the Debtor may have had or may have against the holder of any claim or arising or of or related to any cliam, and any and all such cliams, objections, defenses, set-offs, counterclaims, or the like of the Debtor shall survive confirmation and consummation of the Plan.

8.

In the event of a conversion to a case under another Chapter of Title 11 of the U.S. Bankruptcy Code, the Debtor shall have the right to redeem collateral pursuant to Section 722 of the Bankruptcy Code.

9.

The payments to be made to secured creditors hereunder through the Trustee are set forth on Exhibit "A" attached hereto. In the event of a conflict between the provisions of Exhibit "A" and the treatment of creditors set forth in Article I hereof, the terms of Article I shall control.

10.

Debtor shall be responsible for the payment of any and all homeowner's/liability insurance and property and ad valorem taxes on the real properties secured by Class I, II, and II Creditors during the pendency of the instant case, and as provided by the security agreements or original promissory notes related to the respective debt. Debtor shall provide proof of said insurance coverage or tax payments to interested parties upon request.

11.

The effective date of the Chapter 12 Plan shall be the date of the Order Confirming the Chapter 12 Plan, and the Trustee shall begin distributions pursuant to the confirmed plan as soon as practicable thereafter. Trustee is authorized to disburse funds to creditors pursuant to this plan for the months of December 2011 through March, 2012 at that time, as funds are available.

## ARTICLE V
## CLOSING OF THE CASE AND DISCHARGE

The case may be closed within six (6) months after the third year.  Prior to closing, the Debtor shall have an accounting by the Trustee for payments in accordance with the Plan.  The Debtor shall be discharged from pre-petition debts as the treatment of each debt under the provisions of the Plan is completed.  Closing of the case shall terminate the Bankruptcy Estate and the services of the Trustee.  The Court shall retain jurisdiction through the closing of the case, and may reopen the case for further administration on request of the Debtor.

## ARTICLE VI
## EFFECTIVE DATE OF THE PLAN AND
## MODIFICATION OF THE PLAN

The effective date of the Plan shall be the first day of the first month following confirmation of the Plan.  Debtor may propose amendments or modifications of the Plan at any time prior to the confirmation of the Plan, and the Plan, as modified, shall become the Plan.  After confirmation, the Debtor may modify this Plan with leave of Court prior to completion of payments under the Plan.

## ARTICLE VII
## MOTION TO CONFIRM

Debtor requests that the Court confirm a Plan of payments for claims over a period of three (3) years, (except for allowed secured claims and claims on which the last payment is due after three (3) years), pursuant to 11 U.S.C. Section 1222©).

This 26th day of March, 2012.

/s/
Joseph Kirkland

/S/
Robert M. Gardner, Jr.
Attorney for Debtor
Ga. Bar No. 284640
53 W. Candler St.
P.O. Box 721
Winder, Georgia 30680
Telephone:     (770) 307-4899

Exhibit "A"

| | | |
|---|---|---|
| Community & Southern Bank | Farm | $2,068.13/mo. |
| Community & Southern Bank | Trailer Park | $445.59/mo. |
| BAC Home Loan Svc LP | Residence | $1,347.69/mo. |